IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

DAVID WARRAN MOSLOW, JR.                                          PLAINTIFFS
and SUZANNE MOSLOW

V.                                                      NO. 3:24-CV-55-DMB-RP

CITY OF SOUTHAVEN, MISSISSIPPI,
et al.                                                            DEFENDANTS

### OPINION AND ORDER

David Warran Moslow, Jr., and Suzanne Moslow allege in their amended complaint that

constitutional violations by the Mississippi Department of Corrections, Dr. Timothy J. Donovan,

Jeworski Mallet, and others resulted in David being improperly classified and confined at MDOC

prison facilities.  MDOC, Mallett, and Donovan move to dismiss the claims against them.  Because

the Moslows' claims against these defendants are either barred by the Eleventh Amendment or are

not viable under 42 U.S.C. § 1983 and the Eighth Amendment, the motion to dismiss will be

granted.

### I
### Relevant Procedural History

On July 23, 2024, David Warran Moslow, Jr., and Suzanne Moslow filed an amended

complaint in the United States District Court for the Northern District of Mississippi against City

of Southaven, Mississippi; Southaven Police Department ("SPD"); Former Police Chief Macon

Moore, individually and in his official capacity as Chief of Police of the SPD; Desoto County

Sheriff's Department; Mississippi Department of Corrections ("MDOC"); Dr. Timothy J.

Donovan, M.D., individually and in his official capacity as Chief Medical Officer for MDOC;

Jeworski Mallett, individually and in his official capacity as Deputy Commissioner for Institutions

of MDOC; Former Sheriff Bill Rasco, individually and in his capacity as the Sheriff of Desoto County, Mississippi; Officer Javier Iniguez (Badge #1255), individually and in his official capacity as an officer of the SPD; Officer D. Moore (Badge #1424), individually and in his official capacity as an officer of the SPD; Officer Gary Frank (Badge #1421), individually and in his official capacity as an officer of the SPD; Mississippi State Penitentiary ("MSP"); and Central Mississippi Correctional Facility ("CMCF").[1]  Doc. #79.  In their amended complaint, the Moslows assert claims under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and state law, all based on David's confinement at CMCF and MSP.  Doc. #79. As relief, the Moslows request "[a] judgment for damages sustained by … Suzanne … for a claim for loss of consortium for the damages sustained by [David];" "[c]ompensatory damages in the amount of five million dollars … under 42 U.S.C. § 1983;" "[p]unitive damages in the amount of five million dollars … pursuant to 42 U.S.C. § 1983;" and "[a]ttorney fees, costs, and expenses … pursuant to 42 U.S.C. § 1988."  *Id.* at 49.

On August 7, 2024, MDOC, Mallett, and Donovan ("MDOC Defendants") filed a motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (12(b)(6).  Doc. #85.  The Moslows responded in opposition, and the defendants replied.  Docs. #87,[2] #89.

## II
## Standard

A motion under Federal Rule of Civil Procedure 12(b)(1) asserts a lack of subject-matter jurisdiction.  Fed. R. Civ. Pro. 12(b)(1).  In evaluating a Rule 12(b)(1) motion, a court may consider

[1] The Moslows filed their original complaint on February 28, 2024, naming the same defendants along with Nathan Burl Cain, individually and in his official capacity as Commissioner of MDOC.  Doc. #1.  The amended complaint, which removed Cain as a defendant, was filed with leave of the Court.  Doc. #78.  On January 10, 2025, the Moslows voluntarily dismissed with prejudice CMCF and MSP.  Doc. #122.

[2] In violation of Local Rule 7(b)(2), the Moslows attached an exhibit to their memorandum brief.  Doc. #89-1.

"(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. USA*, 74 F.3d 657, 659 (5th Cir. 1996) (quoting *Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989). The allegations in the complaint are taken as true in determining whether a sufficient basis for subject matter jurisdiction exists. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the pleading, on its face, must demonstrate that there exists a plausibility for entitlement to relief." *Young-Trezvant v. Lone Star Coll. Sys.*, No. 23-20551, 2024 WL 2794483, at *1 (5th Cir. May 31, 2024). "Facial plausibility is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Benfer v. City of Baytown, Tex.*, 120 F.4th 1272, 1279 (5th Cir. 2024) (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021)). The complaint's allegations "must be accepted as true and viewed in the light most favorable to the plaintiffs," *Terwilliger*, 4 F.4th at 279, but not "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Aris-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. Customs and Border Patrol, U.S. Customs and Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020).

Though a Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss are analyzed under the same plausibility standard, *Ghedi v. Mayorkas,* 16 F.4th 456, 463–64 (5th Cir. 2021), a court "should

first consider the Rule 12(b)(1) jurisdictional attack before addressing the attack on the merits" when dismissal is sought on both grounds, *Ramming*, 281 F.3d at 161.

**III**
**Relevant Factual Allegations**

On or about November 17, 2022, David entered an Alford plea to the charge of "Retaliation Against a Public Servant." Doc. #79 at 15. Under the terms of the plea agreement, he was sentenced to serve two years in MDOC custody. *Id.* at 15. After being taken into custody, officers took David to the Hernando, Mississippi, Detention Center, where he remained until January 19, 2023, when he was transferred to the Central Mississippi Correctional Facility in Pearl, Mississippi, for "receiving and classification."[3] *Id.* at 16. On or about February 24, 2023, a CMCF classification case manager interviewed David and informed him that his NCIC arrest record contained a violent charge for "drive by shooting." *Id.* at 18. David was told he would be classified a "medium" because of "his violent criminal history on his NCIC" and was transferred to Mississippi State Penitentiary – Parchman on or about March 6-7, 2023. *Id.* David has never been arrested for, charged with, or found guilty of a drive by shooting.[4] *Id.* David contacted Suzanne to request aid in amending his NCIC arrest record. *Id.* at 22. On or about March 17, 2023, Suzanne spoke with Sheriff Bill Rasco's office, and he agreed to draft a letter which admitted that David's arrest record was incorrect.[5] *Id.*

David was placed in a prison unsuitable for such a nonviolent offender – Parchman. *Id.* at

---

[3] "Classification … is a process by which information is compiled concerning offenders, and based upon this information, the housing unit, earned time status, custody level, and program placement is determined." Doc. #79 at 16.

[4] The drive-by shooting arrest allegedly occurred on or about April 15, 2021. *Id.* at 18. "[O]n April 15, 2021, [David] was arrested for 'driving under the influence (which has since been non-adjudicated), failure to wear a seatbelt, careless driving, and unsafe operation of a vehicle.'" *Id.* at 18 (cleaned up).

[5] Rasco was formerly the "Sheriff for the Sheriff's Department of Desoto, County, Mississippi, Police Department." Doc. #79 at 5. The written letter "specifically admits that, The 'code 4 charge of drive by shooting severity: F' should be changed to 'offender was charged with DUI 1st and statute should be 63-11-30(1)(a).'" *Id.* at 22.

24.  Upon his arrival at Parchman, David submitted four requests for a medical review but was denied.[6]  *Id.*

On or about April 9, 2023, David was physically attacked and raped by six other prisoners while a black woman Parchman guard kept lookout.[7]  *Id.* at 25.  On or about April 24, 2023, prison officers transferred David back to CMCF for reclassification.  *Id.* at 27.  David was told they were transferring him so he could be reclassified at CMCF, and possibly sent to a minimum-security prison.  *Id*.  Upon arriving at CMCF, David was never reclassified.[8]  *Id*.  But on or about May 26, 2023, MDOC granted Moslow parole, and on June 14, 2023, CMCF released him from MDOC custody.  *Id.* at 29.

## IV
## Analysis

The amended complaint alleges that (1) Mallett "violated [the Moslows'] 14th Amendment rights because he personally created a … classification system which allowed his staff to take under consideration an inmate's NCIC arrest record when categorizing an offender" and "allowed agents to consider an arrest record that does not accurately reflect a person's criminal history;" (2) Mallett has supervisory liability under 42 U.S.C. § 1983 because "[a]s a direct and proximate result of implementing inappropriate and unconstitutional standards of classification, [David] was placed in a prison and zone with inmates who cause seriously bodily harm to [him];" (3) the MDOC Defendants deprived David of his Eighth Amendment rights; and (4) Donovan has supervisory

---

[6] "[David] suffers from high blood pressure, severe obstructive lung disease, and nocturnal desaturation. [David] also had recently undergone remission for cancer and underwent left knee replacement surgery." *Id.* at 24.

[7] "Later in the week, [David] was once again physically assaulted by prisoners, who used their shoes as weapons …. A fellow prisoner also threatened [David] by stating, 'We will kidnap you and you will leave this prison in a body bag.'" *Id.* at 26.  "After these assaults and rape, … [Suzanne] contacted Parchman officials regarding the cruel, violent, and inhumane treatment of [David]." *Id.*

[8] On April 30, 2023, the violent assaults on David began again.  *Id.* at 28.  On or about May 15, 2023, David endured his final physical assault where the assailants stole all of his possessions and his prescription glasses.  *Id.*  There was no guard supervision at the time of this attack.  *Id.*

liability under 42 U.S.C. § 1983 "[a]s a direct and proximate result of [his] individual failure to adequately train, staff, and supervise the physicians and nurses at Parchman." Doc. #79 at 38–44. The MDOC Defendants submit the amended complaint against them should be dismissed because (1) the Moslows' "claims against [them] in their official capacities are barred by the doctrine of sovereign immunity;" (2) the Moslows "fail to state a claim for which relief can be granted for the claims of 'Unconstitutional Classification Standards' and violations under the Eighth Amendment;" (3) "as to the individual claims against Deputy Commissioner Mallett and Dr. Donovan, [the Moslows do] not allege any facts that would give rise to supervisor liability;" and (4) "recovery under *respondeat superior* is unavailable for federal claims under 42 U.S.C. § 1983." Doc. #85 at 1–2 (emphasis in original).

### A. Sovereign Immunity

The MDOC Defendants argue that all claims against MDOC and all the official capacity claims against Mallett and Donovan are barred by the Eleventh Amendment and "must be dismissed because MDOC is an arm of the State" and "any claims against state officials in their official capacity is [sic] deemed to be a lawsuit against the State." Doc. #86 at 4–6.

The Moslows respond that the MDOC Defendants, "in their official capacities, waived their immunity because they brought a cause of action against them regarding the unconstitutional polices outlined in the MDOC handbook," specifically those that set forth the classification standards for inmates." Doc. #88 at 4. They elaborate:

> [U]nder the *Ex Parte Young* doctrine, the [MDOC] Defendants may be held liable for implementing "a policy that itself is a repudiation of a constitutional right." In this case, the MDOC handbook clearly uses an inmate's arrest record, no matter if it contains true information or not, as a factor in classifying a prisoner. An arrest record is not a conviction. Therefore, using an arrest record, where a Defendant has not been tried by a jury of his peers and found "guilty beyond a reasonable doubt" clearly violates [David's] 14th amendment due process rights. In fact, an arrest record does not provide a criminal any due process rights – it is just a record of

arrests, not guilty verdicts. As such, the Defendants in this matter have waived their immunity to suit under the 11th amendment.

*Id.* at 4–5 (citations omitted).

The MDOC Defendants reply that "[i]t is undisputed here that Mississippi has not waived sovereign immunity in this case and that no Congressional loophole applies," and the *Ex Parte Young* exception does not apply because the Moslows do not "seek[] prospective relief to redress ongoing conduct."  Doc. #90 at 3.

### 1. Arm of state

Under the Eleventh Amendment, "[s]tates are immune from private suits unless they consent or unless Congress validly strips their immunity."  *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022).  "[A]n entity … asserting sovereign immunity bears the burden of demonstrating that it is an arm of the state."  *Diaz v. Cantu*, 123 F.4th 736, 744 (5th Cir. 2024) (quoting *Bonin v. Sabine River Auth.*, 65 F.4th 249, 253 (5th Cir. 2023) (alteration in original). There is a clear distinction between "'arms of the state' and those entities 'possessing an identity sufficiently distinct from that of the state to place it beyond the Eleventh Amendment's shield.'" *Bonin*, 65 F.4th at 254 (quoting *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 131 (5th Cir. 1986) (cleaned up).

It is well-settled that MDOC is an arm of the state.  *See, e.g., Butler v. Hall*, No. 3:20-cv-00292, 2022 WL 818739, at *4 (N.D. Miss. Feb. 14, 2022) ("The MDOC is an arm of the State of Mississippi and is protected from suit by the Eleventh Amendment."); *Towns v. Miss. Dep't of Corr.*, No. 4:19-70, 2020 WL 1249904, at *3 (N.D. Miss. Mar. 15, 2020) ("Considering … the abundance of case law which support the Defendants' position, the Court finds that MDOC is an 'arm of the state' for Eleventh Amendment purposes."); *Jones v. Tyson Foods, Inc.*, 971 F. Supp. 2d 671, 678 (N.D. Miss. 2013) ("MDOC is responsible for managing and operating the

7

correctional system for the State, and thus is an arm of the State."); *see also Wedgeworth v. Mississippi*, No. 3:17-cv-730, 2018 WL 1463496, at *4 (S.D. Miss. Mar. 23, 2018) ("MDOC is considered an arm of the state," citing Miss. Code. Ann. § 47-5-1); *Humphrey v. South Miss. Corr. Inst.*, No. 1:15-cv-424, 2017 WL 706082, at *4 (S.D. Miss. Feb. 22, 2017) ("MDOC is an arm of the state and its officers and employees are therefore employees of the state."). And to the extent the Moslows contend MDOC waived sovereign immunity, "an arm of the state waives state sovereign immunity only if it 'voluntarily invokes federal court jurisdiction, or … makes a 'clear declaration' that it intends to submit itself to federal court jurisdiction," which declaration must be unequivocally expressed." *United States Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 502 (5th Cir. 2018) (omission in original) (quoting *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005)). The fact that dismissal of the claims against MDOC is sought makes clear MDOC has not declared any intent to submit itself to this Court's jurisdiction, unequivocally or otherwise, and it certainly did not invoke this Court's jurisdiction. According, the claims against MDOC are jurisdictionally barred by the Eleventh Amendment.

## 2. State officials

The Eleventh Amendment "remains in effect when State officials are sued for damages in their official capacity" because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). However, under the *Ex Parte Young* exception, because "[s]overeign immunity is not limitless, … a litigant may sue a state official in his official capacity if the suit seeks prospective relief to address an ongoing violation of federal law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 735–36 (5th Cir. 2020). To overcome the

Eleventh Amendment's bar against suit against state officials in their official capacity, the party's lawsuit must (1) "be brought against state officers who are acting in their official capacities;" (2) "seek prospective relief to redress ongoing conduct;" and (3) "allege a violation of federal, not state, law." *Id.* at 736. The Court need only examine the complaint to determine whether it includes allegations of ongoing violations of federal law and a request for prospective relief. *Id.*

The Moslows do not seek any prospective relief against Mallet and Donovan aimed at remedying current violations of federal law. *See Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 471–72 (5th Cir. 2020) ("[A]s long as the claim seeks prospective relief for ongoing harm, the fact that a current violation can be traced to a past action does not bar relief under … *Young*.") (ellipsis in original); *see also Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) (*Young* exception "focus[es] on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past."); *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (to satisfy *Young*, complaint "must allege that the defendant *is violating* federal law, not simply that the defendant has done so") (emphasis in original). Consequently, the claims against Mallett and Donovan in their official capacities are jurisdictionally barred by the Eleventh Amendment.

### B. Unconstitutional Classification

The MDOC Defendants contend that "[e]ven though the Moslows' claims against [Donovan and Mallett] are barred by the Eleventh Amendment, [their unconstitutional classification] claim must also be dismissed because there is no liberty interest in a prisoner's custodial classification."[9] Doc. #86 at 7.

---

[9] The MDOC Defendants argue that because Mallett and Donovan "in their official capacities are not a 'person' amenable to suit under § 1983," the claim for unconstitutional practices and classification standards must fail. Doc. #90 at 4–5. But the amended complaint asserts claims against Mallett and Donovan "acting under color of state law"

The Moslows submit that "[b]ased on the notoriety and severity of the numerous constitutional violations at Parchman, this Court should find Parchman analogous to that of a supermax prison as set forth in *Wilkinson*, 545 U.S. at 221, and therefore, find that [they] have set forth plausible facts to show a constitutional violation based on classification standards."[10]  Doc. #88 at 7.

"Generally, courts are not concerned with a prisoner's initial classification level based on his criminal history before his incarceration."  *Wilkerson v. Stalder*, 329 F.3d 431, 435 (5th Cir. 2003).  Although the Fifth Circuit has consistently held that "post-*Sandin*[,] … an inmate has no protectable liberty interest in his classification," *id.* at 435–36, the Court should initially determine whether David's confinement in Parchman resulted from his classification prior to confinement, *see id.* at 436 ("[I]f the inmates' confinement in extended lockdown is not the result of their initial classification, the *Sandin* test would be triggered.").  And only after this should the Court assess whether David's confinement "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), such that David has a "protected, state created liberty interest in avoiding restrictive conditions of confinement," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005).

The amended complaint includes allegations that David's incorrect arrest record led to the medium-risk classification that contributed to his transfer to and confinement at Parchman.  Doc.

---

in both their individual and official capacities.  Doc. #79 at 6–7.  *See Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) ("Claims under § 1983 may be brought against persons in their individual or official capacity.").

[10] The plaintiffs rely on *Wilkinson v. Austin*, 545 U.S. 209 (2005), to argue that because of the "grotesque" conditions at Parchman, the Court should find David had a protected liberty interest in his prisoner classification.  Doc. #88 at 5–7.  The MDOC Defendants submit this argument "fails for two reasons: 1) MDOC and the State defendants in their official capacities are not a 'person' amenable to suit under §1983, and 2) *Wilkinson* is distinguishable and can be dispensed of" because "[t]he *Wilkinson* Plaintiffs[ who] challenged the conditions of confinement under the 14th Amendment sought prospective relief" compared to the Moslows who are "suing … for unconstitutional classification policies and … seeking compensatory and punitive damages."  Doc. #90 at 4, 5.

#79 at 39. Though prior to his confinement at Parchman, David underwent an intake process at CMCF where he received the classification. *Id.* at 16. Because David's confinement at Parchman is the result of the initial medium-risk classification he received at a prior facility, the Court does not conclude that David has a protected liberty interest—or experienced a denial of a liberty interest—in his prisoner classification. Accordingly, the Moslows' unconstitutional classification claim is dismissed.

## C. Supervisory Liability

The MDOC Defendants argue the "individual capacity claims against Mallett and Donovan for supervisory liability under 42 U.S.C. § 1983" must be dismissed because (1) the Moslows "fail[] to demonstrate personal involvement by any of the Defendants," and (2) "the doctrine of *respondeat superior* … is unavailable in suits under 42 U.S.C. § 1983." Doc. #86 at 10, 11 (emphasis in original). The Moslows respond that because (1) Mallett "personally wrote the MDOC handbook, which uses unlawful and unconstitutional criteria to initially classify inmates" and (2) Donovan "was personally involved in the denial of needed medical services and protection [of David] from physical violence/rape," both can be held liable for supervisory liability. Doc. #88 at 9, 10. The defendants reply that "there is no plausible claim for individual liability on behalf of … Mallett and … Donovan" because "Plaintiff only recites formulaic legal conclusions in an attempt to establish liability." Doc. #90 at 8.

Generally, "[l]iability under the doctrine of *respondeat superior* is not cognizable in actions brought pursuant to 42 U.S.C. § 1983." *Ford v. Anderson Cnty., Tex.*, 102 F.4th 292, 321 (5th Cir. 2024) (emphasis in original); *see Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.") (emphasis in original). "To establish supervisory liability under § 1983, [a plaintiff] must show some degree of personal involvement

by the supervisor, alleging that the supervisor either affirmatively participates in the acts that cause the constitutional deprivation, or … implements unconstitutional policies that causally result in the constitutional injury." *Ray v. Boone*, No. 24-40169, 2024 WL 4372692, at *2 (5th Cir. Oct. 2, 2024) (quoting *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018) (internal quotation marks omitted)).  A plaintiff must "specify the personal involvement of each defendant … and cannot make generalized allegations." *Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992).

There is nothing in the amended complaint specifying any personal involvement by Mallett and Donovan in the constitutional violations alleged by David much less anything alleging the degree of their personal involvement.  The amended complaint alleges only that Mallett "had actual notice of the[] unconstitutional standards in his MDOC handbook" and Donovan "created and implemented certain policies and procedures for the medical care of all inmates in the MDOC system."  Doc. #79 at 40, 43.  Absent allegations of their personal involvement or the degree of such, Mallett's and Donovan's liability under § 1983 cannot be established.  *See Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (indirect involvement in plaintiff's arrest does not give rise to "overt personal participation").  And given the vagueness of the Moslows' allegations, there is not sufficient causal connection between any standards in the MDOC handbook created and implemented by Mallett, Donovan's policies, and the alleged constitutional violations.  *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.").  Accordingly, the Moslows' supervisory liability claims cannot survive.

12

### D.  Eighth Amendment Deliberate Indifference

The MDOC Defendants argue that the Moslows' Eighth Amendment claims for inadequate medical care and inadequate supervision and understaffing fail because the Moslows "present no facts that demonstrate … Mallett or Donovan refused to treat [David] or intentionally ignored his complaints."[11]  Doc. #86 at 10.  The Moslows counter that the "MDOC officer [who] conspired with inmates to serve as a lookout for [David's] rape" gives rise to "plausible claims of deliberate indifference under the 8th Amendment."  Doc. #88 at 8.  In reply, the MDOC Defendants submit that because "neither MDOC nor the named defendants in their official capacities are considered 'persons' in the context of §1983 liability," "all federal claims against MDOC must be dismissed."  Doc. #90 at 6.

A prison official acts with deliberate indifference under the Eighth Amendment if (1) "he knows that inmates face a substantial risk of serious bodily harm" and (2) "he disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  Regarding an Eighth Amendment claim based on failure to provide proper medical care, deliberate indifference requires the prisoner to show prison officials "refused to treat [him], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Young v. McCain*, 760 Fed. App'x 251, 256 (5th Cir. 2019).  Liability does not attach "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

---

[11] According to the MDOC Defendants, "the Moslows merely allege that because of understaffing, [David] was assaulted;" and David "was moved to a different facility once the alleged attacks were brought to the attention of MDOC officials."  Doc. #86 at 10 (cleaned up).

The amended complaint alleges that "[d]espite having direct knowledge of the substantial risk of serious harm [David] face[d] as a result of receiving poor medical care, Defendants continued to endanger him through their policies and practices, namely, not providing needed blood pressure medication, not allowing timely physician exams, not allowing [David] to use a bottom bunk, improper guard supervision, and understaffing;" and that "Defendants have subjected [David] to a substantial risk of serious harm by failing to protect him from violence, ignoring any violent acts or omissions committed upon him, and enabling/allowing violent attacks on him, specifically allowing a prison guard to serve as a lookout during a brutal rape."  Doc. #79 at 40–41, 42.  But these allegations fall short of the deliberate indifference standard because they fail to specifically allege that Donovan and/or Mallett knew of and disregarded the risks of harm to David's health or safety.  *See Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) ("Brewster alleges that officials confiscated his spare eye, but this allegation, without more, does not indicate that prison officials were aware that their actions exposed Brewster to a substantial health risk, or that the officials consciously disregarded that risk.").  And though David alleges he placed four requests for medical review that were ultimately denied, presented to medical personnel where his blood pressure was 212/200, and was only provided blood pressure medication and Prilosec irrespective of his other health conditions, he still does not allege that Donovan and Mallett were responsible for these omissions.[12]  Finally, the MDOC defendants are correct that they are not

---

[12] Though not raised by the MDOC Defendants, the Moslows' complaint as a whole generally alleges acts and/or omissions by "Defendants" without explaining the basis for grouping all defendants together or identifying which of the named defendants is allegedly liable for the constitutional violations alleged.  *See, e.g.*, Doc. #79 at ¶ 162 ("Defendants continued to endanger [David] through their policies and practices."), ¶ 166 ("Defendants have subjected [David] to a substantial risk of serious harm and injury."), ¶ 168 ("Defendants have subjected [David] to a substantial risk of serious harm by failing to protect him."), ¶ 169 ("[David] informed Defendants of the deprivations, and Defendants have either condoned or been deliberately indifferent to the conduct.").  By doing so, the Moslows' amended complaint could be deemed a shotgun pleading, which frustrates the very purpose of Federal Rule of Civil Procedure 8(a)(2)'s pleading requirement.  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (shotgun pleading fails to distinguish between actions of named defendants); *Atuahene v. City of Hartford*, 10 Fed. App'x 33,

persons for purposes of the official capacity claims against them. *See Adams v. Recovery Sch. Dist. ex. rel. La, Dep't of Educ.*, 463 Fed. App'x 297, 298 (5th Cir. 2012) ("For purposes of § 1983, states and arms of a state are not persons."). Accordingly, the Moslows' Eighth Amendment claims are properly dismissed.

## V
## <u>Conclusion</u>

The MDOC Defendants' motion to dismiss [85] is **GRANTED**. The claims against MDOC, Mallett, and Donovan are **DISMISSED without prejudice**.[13]

**SO ORDERED**, this 28th day of March, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy [Rule 8].").

[13] *See United States v. $4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*, 942 F.3d 655, 666 (5th Cir. 2019) ("Claims barred by sovereign immunity are dismissed without prejudice, not with prejudice.").