**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**DAVID WARRAN MOSLOW, JR.**                                                             **PLAINTIFFS**
**and SUZANNE MOSLOW**

**V.**                                                                                **NO. 3:24-CV-55-DMB-RP**

**CITY OF SOUTHAVEN,**
**MISSISSIPPI, et al.**                                                           **DEFENDANTS**

**OPINION AND ORDER**

David Warran Moslow, Jr., and Suzanne Moslow allege that constitutional and state law violations by City of Southaven, Officer Javier Iniquez, and Officer Gary Frank led to David being incorrectly classified and confined at the Central Mississippi Correctional Facility and the Mississippi State Penitentiary. The City, Iniquez, and Frank move for judgment on the pleadings. For the reasons below, judgment on the pleadings will be granted.

**I**
**Relevant Procedural History**

On July 23, 2024, David Warran Moslow, Jr., and Suzanne Moslow filed an amended complaint[1] in the United States District Court for the Northern District of Mississippi against City of Southaven, Mississippi; Southaven Police Department ("SPD"); Former Police Chief Macon Moore, individually and in his official capacity as Chief of Police of SPD; Desoto County Sherriff's Department; Mississippi Department of Corrections ("MDOC"); Dr. Timothy J. Donovan, M.D., individually and in his official capacity as Chief Medical Officer for MDOC; Jeworski Mallett, individually and in his official capacity as Deputy Commissioner for Institutions

---

[1] The Moslows filed their original complaint on February 28, 2024, naming the same defendants along with Nathan Burl Cain. Doc. #1. The amended complaint removed Cain as a defendant.

of MDOC; Former Sheriff Bill Rasco, individually and in his capacity as the Sheriff of Desoto County, Mississippi; Officer Javier Iniquez,[2] individually and in his official capacity as an officer of SPD; Officer D. Moore, individually and in his official capacity as an officer of SPD; Officer Gary Frank, individually and in his official capacity as an officer of SPD; Mississippi State Penitentiary ("MSP"); and Central Mississippi Correctional Facility ("CMCF"). Doc. #79. In their amended complaint, the Moslows assert claims under the Eighth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and state law, all based on David's confinement at CMCF and MSP. *Id.* at 3. As relief, the Moslows seek "[a] judgment for damages sustained by … Suzanne … for a claim for loss of consortium for the damages sustained by [David];" "[c]ompensatory damages in the amount of five million dollars … under 42 U.S.C. § 1983;" "[p]unitive damages in the amount of five million dollars … pursuant to 42 U.S.C. § 1983;" and "[a]ttorney fees, costs, and expenses … pursuant to 42 U.S.C. § 1988." *Id.* at 49.

On September 3, 2024, the City, SPD, Chief Moore, Iniquez, and Frank filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Doc. #91. Briefing on the motion for judgment on the pleadings was completed October 14, 2024.[3]

On December 9, 2024, Officer D. Moore was dismissed without prejudice due to the Moslows' failure to serve him. Docs. #115, #120. On January 10, 2025, the Moslows voluntarily dismissed with prejudice CMCF and MSP. Doc. #122. On June 3, 2025, the parties stipulated to the dismissal with prejudice of DeSoto County Sheriff's Department and Rasco. Doc. #143. Three days later, the parties did the same with respect to all claims against SPD and Former Chief Moore,

---

[2] The amended complaint spells Javier's last name as "Iniquez" or "Iniguez" while the motion spells it as "Iniguez." *See generally* Docs. #79, #91.

[3] Docs. #92, #102, #107. Because the Moslows failed to refile their response and memorandum brief as directed by the Clerk of the Court due to their failure to comply with Local Rule 7(b)(2), and have offered no reason or excuse for such failure, their response and memorandum brief are not considered.

2

and all federal claims against the City. Doc. #145. So, all that remains of the September 3 motion for judgment on the pleadings for the Court to address are the claims against Iniquez and Frank and the state law claims against the City ("City Defendants").[4]

## II
## Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard to evaluate a motion under Rule 12(c) is the same as a motion under Rule 12(b)(6). *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022). For a complaint to survive a Rule 12(c) motion, it must "contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, since Rule 10(c) "incorporates into the pleadings all exhibits attached thereto, the district court can consider those documents in deciding a Rule 12(c) motion without converting it into a Rule 56 summary judgment motion." 5C Wright & Miller's *Federal Practice & Procedure* § 1371 (3d ed. 2024); *see Foerster v. Bleess*, No. 20-20583, 2022 WL 38996, at *2 (5th Cir. Jan. 4, 2022) ("In our *de novo* review of the grant of a Rule 12(c) motion, we consider 'the contents of the pleadings, including attachments thereto.'") (emphasis in original) (quoting *Bosarge v. MS Bureau of Narcotics*, 769 F.3d 435, 440 (5th Cir. 2015)).

---

[4] On June 20, 2025, the Moslows moved for leave to file a second amended complaint. Doc. #146. That motion will be addressed by separate order.

3

## III
## Relevant Factual Allegations

Beginning in 2019, David Moslow, Suzanne Moslow, and Officer Javier Iniquez began having frequent confrontations in Southaven, Mississippi. Doc. #79 at 9. These interactions began because Iniquez was an officer assigned to the school one of David's children attended. *Id.* at 10. One of the Moslow children had disciplinary issues, causing David or Suzanne to physically appear at the school or appear via Zoom. *Id.* Iniquez would frequently attend these meetings. *Id.* Because of these frequent confrontations, Iniquez would either file a police report or David or Suzanne would file an opposing Internal Affairs Complaint with SPD. *Id.*

In 2021, the confrontations between Iniquez and the Moslows heightened. *Id.* Iniquez had David arrested for telephone harassment against a school employee. *Id.* On January 12, 2021, however, after a trial, David was found not guilty of the charge of telephone harassment. *Id.* at 10.

On April 15, 2021, SPD and Iniquez arrested David for "Driving Under the Influence … 1st offense (which has since been non-adjudicated), failure to wear a seatbelt, careless driving, and unsafe operation of vehicle." *Id.*

On or about September 28, 2021, the confrontations between David and Iniquez climaxed at a local peewee football game. *Id.* at 13. David's son played on the school's football team, and Iniquez's son was a team manager. *Id.* At the game, one of David's sons was throwing a football on the sideline to a little boy. *Id.* David's son made an "arrent throw" which resulted in the football flying toward Iniquez, his wife/fiancée, and his small child, who were sitting on nearby bleachers. *Id.* Iniquez batted the ball away before it hit anyone before immediately standing up and aggressively walking toward David. *Id.* David explained that his son threw the ball by accident, not him. *Id.* Iniquez then yelled, "I will deal with you later." *Id.* Iniquez immediately drove to SPD and filed assault charges against David. *Id.* David was arrested for a misdemeanor assault

4

charge of assault/physical fear.[5] *Id.* at 14. A few weeks later, Iniquez convinced the DeSoto County District Attorney's Office to arrest David and Suzanne for "Retaliation Against a Public Servant."[6] *Id.* On December 13, 2021, David and Suzanne were arrested. *Id.* On or about November 17, 2022, David entered an Alford plea to the charge of "Retaliation Against a Public Servant." *Id.* at 15. Under the terms of the plea agreement, he was sentenced to serve two years in MDOC custody. *Id.* After being taken into custody, officers took David to the Hernando, Mississippi, Detention Center, where he remained until January 19, 2023, when he was transferred to CMCF in Pearl, Mississippi, for "receiving and classification."[7] *Id.* at 16.

On or about February 24, 2023, a CMCF classification case manager interviewed David and informed him that his NCIC arrest record contained a violent charge for "drive by shooting."[8] *Id.* at 18. David was told he would be classified a "medium" because of "his violent criminal history on his NCIC" and was transferred to Mississippi State Penitentiary – Parchman on or about March 6-7, 2023. *Id.* David has never been arrested for, charged with, or found guilty of a drive by shooting. *Id.* David contacted Suzanne to request aid in amending his NCIC arrest record. *Id.* at 22. On or about March 17, 2023, Suzanne spoke with Sheriff Bill Rasco's office, and he agreed to draft a letter which admitted that David's arrest record was incorrect.[9] *Id.* David was placed in

---

[5] "On June 9, 2022, the Justice Court of Desoto County, Mississippi, had a full trial with testimony regarding [David's] assault charges stemming from the peewee football game incident. The Court found [him] not guilty of all charges, including assault/physical fear." *Id.* at 14 (emphasis omitted).

[6] "The indictment alleged that [David and Suzanne], 'threatened to harm … Iniguez in retaliation for actions lawfully taken by [him], and the said Officer Javier Iniguez then and there being a law enforcement officer employed by the City of Southaven, Mississippi, Police Department acting within the scope of his duty as a public service in the position as an officer.' In short, it was alleged [David] called … Iniguez racial slurs during their confrontations, and [David] 'threatened' to have '… Iniguez's job.'" *Id.* at 14 (citations omitted).

[7] "Classification … is a process by which information is compiled concerning offenders, and based upon this information, the housing unit, earned time status, custody level, and program placement is determined." *Id.* at 16.

[8] The drive-by shooting arrest allegedly occurred on or about April 15, 2021. *Id.* at 18.

[9] The written letter "specifically admits that, The 'code 4 charge of drive by shooting severity: F' should be changed to 'offender was charged with DUI 1st and statute should be 63-11-30(1)(a).'" *Id.* at 22.

a prison unsuitable for such a nonviolent offender – Parchman.[10] *Id.* at 24. On or about April 9, 2023, David was physically attacked and raped by six other prisoners while a black woman Parchman guard kept lookout.[11] *Id.* at 25.

On or about April 24, 2023, prison officers transferred David back to CMCF for reclassification. *Id.* at 27. David was told they were transferring him so he could be reclassified at CMCF, and possibly sent to a minimum-security prison. *Id.* Upon arriving at CMCF, David was never reclassified.[12] *Id.* But on or about May 26, 2023, MDOC granted David's parole, and on June 14, 2023, CMCF released him from MDOC custody. *Id.* at 29.

## IV
## Analysis

The amended complaint alleges that (1) Iniquez and Frank "violated [David's] rights under the 14th Amendments [sic] … when they negligently and recklessly placed a 'drive by shooting …' charge on [David's] NCIC arrest record;" (2) Iniquez has individual liability under 42 U.S.C. § 1983 because "[a]t all relevant times, [he] was acting under color of state law" and his "conduct deprived David … of certain rights under the Fourteenth Amendment;" (3) Frank has individual liability under 42 U.S.C. § 1983 because "[a]t all relevant times, [he] was acting under color of state law" and his "conduct deprived David … of certain rights under the Fourteenth Amendment;" (4) Iniquez and Frank deprived David of his Eighth Amendment rights; (5) the City is vicariously

---

[10] Upon his arrival at Parchman, David submitted four requests for a medical review but was denied. *Id.* at 24. "[David] suffers from high blood pressure, severe obstructive lung disease, and nocturnal desaturation. [David] also had recently undergone remission for cancer and underwent left knee replacement surgery." *Id.*

[11] "Later in the week, [David] was once again physically assaulted by prisoners, who used their shoes as weapons …. A fellow prisoner also threatened [David] by stating, 'We will kidnap you and you will leave this prison in a body bag.'" *Id.* at 26. "After these assaults and rape, … [Suzanne] contacted Parchman officials regarding the cruel, violent, and inhumane treatment of [David]." *Id.*

[12] On April 30, 2023, the violent assaults on David began again. *Id.* at 28. On or about May 15, 2023, David endured his final physical assault where the assailants stole all of his possessions and his prescription glasses. *Id.* There was no guard supervision at the time of this attack. *Id.*

6

liable under the Mississippi Tort Claims Act ("MTCA") for Iniquez and Frank's "grossly negligent, intentional, and reckless disregard for the safety of the public when they intentionally placed a fraudulent and incorrect charge on [David's] arrest record;" (6) Iniquez is liable for negligence under the MTCA for "purposefully, fraudulently, and maliciously plac[ing] a violent crime on [David's] NCIC record;" and (7) "[u]nder [the Moslows'] state law claims, [Suzanne] makes a claim for loss of consortium and emotional suffering due to the injuries [David] sustained while in prison." Doc. #79 at 30–33, 35-36, 40–43, 44–47, 48.

In seeking judgment on the pleadings, the City Defendants argue that (1) regarding the Moslows' federal law claims, "the official capacity claims must be dismissed as duplicative;" "all of the claims are *Heck* barred, as all of the claims arise out of [David's] conviction and confinement for Retaliation Against a Public Servant;" and the Moslows' § 1983 claims are barred by qualified immunity; and (2) regarding the Moslows' state law claims, they "must be barred by *Heck* because they are based on the same facts as his clearly *Heck*-barred federal claims;" even if they were not, "[t]he state law claims fail as a matter of law regardless" because "the Southaven Defendants are entitled to qualified immunity under the MTCA;" and "because [Suzanne's] state-law claims for loss of consortium are based on an underlying MTCA claim that fails, her loss of consortium claim also fails." Doc. #92 at 7–8, 29–33 (emphasis in original).

### A. Federal Law Claims

#### 1. Official capacity claims

The City Defendants argue that the official capacity claims against Iniquez and Frank must be dismissed as duplicative because "a suit against an officer in his official capacity under federal law is the same as a suit against the entity that employs him." Doc. #92 at 7.

7

Suits against government officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Thus, "an official-capacity suit is … to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Because Iniquez and Frank are SPD employees, and SPD was dismissed with prejudice, the official capacity claims against them are moot. Accordingly, judgment on the pleadings will be granted on the official capacity claims against Iniquez and Frank.

### 2. Individual capacity claims

The City Defendants argue that the § 1983 claims against Iniquez and Frank "are barred by *Heck v. Humphrey*" because "[t]he Amended Complaint is rife with inconsistent allegations which would undermine the validity of [David's] conviction for Retaliation against a Public Servant in violation of *Miss. Code Ann.* §97-9-127 [sic]." Doc. #92 at 8, 9–10 (emphasis in original). The City Defendants point out the inconsistencies in the amended complaint and David's Alford plea, highlighting that the "allegations in the Amended Complaint are not consistent with [David's] underlying conviction" and that "[t]he Moslows §1983 claims are premised on re-framing the circumstances, severity, and lawfulness of his conviction." Doc. #92 at 9.

In *Heck v. Humphrey*, the United States Supreme Court held that "in order to recover damages … for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed …, expunged …, declared invalid …, or called into question." 512 U.S. 477, 486–87 (1994).

8

Regarding the Moslows' allegations that "Officer Iniguez was an officer assigned to one of Mr. Moslow's children's schools. At the time, one of the Moslow children had some disciplinary issues wherein Mr. Moslow or his wife had to physically appear at the school or appear via zoom. Officer Iniguez would frequently attend these meetings," Doc. #79 at 10, the City Defendants submit:

> [I]n his Alford plea, Mr. Moslow admitted that "in January, Mr. Moslow had contact with Officer Iniguez initially related to a complaint filed by Principal Nye at DeSoto Central Elementary School against Mr. Moslow. That Officer Iniguez in his role as school resource officer was involved in conducting an investigation along with a DeSoto County Schools Investigator Busby and did encounter Mr. Moslow on that date. Ultimately, Mr. Moslow was arrested on an outstanding warrant from that initial complaint. Thereafter, beginning in February, multiple complaints were filed by David Moslow and Suzanne Moslow with the Southaven Police Department Internal Affairs Division against Officer Javier Iniguez alleging wrongdoing by the officer against either Mr. David Moslow or Ms. Suzanne Moslow."

Doc. #92 at 10 (emphases omitted) (quoting Doc. #92-1 at 32). And as to the Moslows' allegation that "Defendant Macon had notice that Officer Iniguez and Mr. Moslow had a storied history, as is evident from the numerous Internal Affairs Complaints, arrests, and police reports," Doc. #79 at 33, the City Defendants rebut:

> Mr. Moslow admitted that "Mr. Moslow made statements to officers that were recorded on body camera footage that were threatening to Officer Iniguez and specifically mentioned that he was seeking to have Officer Iniguez lose his job. Additionally, Mr. Moslow would make disparaging remarks and racial slurs against Officer Iniguez during those events." Mr. Moslow further admitted that "[u]ltimately, all internal affairs complaints were investigated by the Southaven Police Department. In many cases, if not all cases, there was numerous body camera footage available to show which officers were involved in these incidents, which sometimes would include Officer Iniguez but not always, and all Internal Affairs complaints made by either Mr. or Ms. Moslow were found to be unfounded."

Doc. #92 at 11 (emphases omitted) (quoting Doc. #92-1 at 34). Further, regarding the Moslows' allegations that "Officer Iniguez, out of spite, contempt, malice, and vengefulness, wanted to 'deal' with [David] even more" so "[o]nly a few weeks later, [he] convinced the Desoto County

9

District's Attorney's office to arrest [David and Suzanne] for Retaliation against a Public Servant in violation of Mississippi Code Annotated § 97-9-127 in the Circuit Court of Desoto County, Mississippi," Doc. #79 at 14, the City Defendants counter that "Mr. Moslow acknowledged that the state could prove that 'David Warren Moslow, Jr., between February 25th and December 1st of 2021, did willfully, unlawfully and feloniously, threaten to harm Officer Javier Iniguez in retaliation for actions lawfully taken by Officer Javier Iniguez.'" Doc. #92 at 12 (quoting Doc. #92-1 at 31).

In their amended complaint, the Moslows make clear that "[David] pled guilty to the crime of Retaliation Against a Public Servant, and therefore, does not question the constitutionality of this specific charge" and "does not dispute he should have gone to prison for [it]," but instead they "question the constitutionality of the intentional false police reporting and conditions of the prison," submitting they "are not using § 1983 to collaterally attack a prior criminal proceeding." Doc. #79 at 15 nn.2 & 3. To the extent the City Defendants urge that "'a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that violation arose from the same facts attendant to the charge for which he was convicted,'" Doc. #92 at 8–9 (quoting *Ducksworth v. Rook*, 647 Fed. App'x 383, 385 (5th Cir. 2016)), the amended complaint shows the basis of the Moslows' suit arises from an "improper arrest record," not David's conviction under Miss. Code. Ann. § 97-9-127. Doc. #79 at 1. Because the Moslows do not challenge, undermine, or seek to collaterally attack this conviction, *Heck* does not bar the individual capacity claims against Iniquez and Frank. *See Ballard v. Burton*, 444 F.3d 391, 399–401 (5th Cir. 2006) (excessive force claim not *Heck*-barred because it did not call into question the plaintiff's prior assault conviction).

10

### 3. Qualified immunity

The City Defendants argue that the Moslows' federal claims against Iniquez and Frank are "barred by … qualified immunity … as the Amended Complaint fails to state a claim as to any constitutional violation [and] fails to establish a violation of clearly established law (for QI)." Doc. #92 at 7. They submit that Iniquez and Frank are entitled to qualified immunity because though the Moslows "attempt, in the amended pleading, to allege the personal involvement by these officers in the Moslow NCIC record, … the alleged resulting 'damage' does not amount to a constitutional violation." *Id.* at 23. They also contend that the Moslows "offer[] no argument such a constitutional right (as alleged) was clearly established." *Id.* at 24.

To state a cause of action under § 1983, "the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation." *Banks v. Herbrich*, 90 F.4th 407, 417 (5th Cir. 2024). "A state official sued under § 1983 is entitled to qualified immunity from damages, which protects the official from liability for any act that was not objectively unreasonable at the time of the act." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). A plaintiff seeking to overcome a qualified immunity defense must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Id.* (internal quotation marks and citation omitted). To be clearly established for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If, on the plaintiff's version of the facts, there is no constitutional violation, the defendant's conduct cannot constitute a violation of clearly established law. *Johnson v. Johnson*, 385 F.3d 503, 525 (5th Cir. 2004).

First, as the City Defendants raise[13] and the Court noted in its March 28 "Opinion and Order," because David has no protected liberty interest in his custody classification,[14] his incorrect reporting claim under the Fourteenth Amendment fails.

Second, the Moslows' allegations that Iniquez and Frank "violated [David's] rights under the 14th Amendments [sic] … when they negligently and recklessly placed a drive by shooting … charge on [David's] NCIC arrest record," "prevent[ing] [him] from receiving proper due process of law and den[ying] [[David] life and liberty because Defendants CMCF and Parchman used these unfounded and false criminal charges as an excuse to place [David] in an unsafe, ill-equipped, and dangerous prison" fail because as noted above, David has no protected liberty interest in his custody classification.

Finally, to the extent the Moslows' plead a deliberate indifference claim under the Eighth Amendment, asserting that "[d]espite having direct knowledge of the substantial risk of serious harm [David] face[d] as a result of receiving poor medical care, Defendants continued to endanger him through their policies and practices, namely, not providing needed blood pressure medication, not allowing timely physician exams, not allowing [David] to use a bottom bunk, improper guard supervision, and understaffing;" and that "Defendants have subjected [David] to a substantial risk of serious harm by failing to protect him from violence, ignoring any violent acts or omissions committed upon him, and enabling/allowing violent attacks on him, specifically allowing a prison guard to serve as a lookout during a brutal rape," Doc. #79 at 40–41, 42, they fail to allege that Iniquez and/or Frank knew of and disregarded the risks of harm to David's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (prison official acts with deliberate indifference

---

[13] Doc. #92 at 14.

[14] Doc. #137 at 9–11.

under Eighth Amendment if "he knows that inmates face a substantial risk of serious bodily harm and disregards that risk by failing to take reasonable measures to abate it"); *see also Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) ("Brewster alleges that officials confiscated his spare eye, but this allegation, without more, does not indicate that prison officials were aware that their actions exposed Brewster to a substantial health risk, or that the officials consciously disregarded that risk."). Accordingly, the Moslows' Eighth Amendment claim fails.

Because there are no alleged constitutional violations[15] for which Iniquez or Frank can be liable or personally involved in, it is not necessary to analyze the qualified immunity arguments as to them. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity."). Judgment on the pleadings will be granted as to the Moslows' individual capacity claims.

### B. State Law Claims

#### 1. MTCA

The City Defendants argue that "[t]he state law claims fail as a matter of law" because under the MTCA, the Moslows' are prohibited from suing both the City and the individual officers;" "any state law claim against the Defendants are wholly barred by the Inmate Exception of the MTCA;" "under § 11-46-9(1)(a), none of the Defendants shall be liable for any claim arising out of a … judicial action or inaction, or administrative action or inaction of a … judicial nature;" "any state claims against the City … for alleged poor training are also barred by the MTCA's Police Function Exemption;" and the Moslows' "claims arising out of retention, hiring,

---

[15] To the extent the City Defendants contend that "the Moslows' have maintained a Fifth Amendment claim in the Amended Complaint, such must be dismissed," Doc. #92 at 14, the amended complaint does not include a claim under the Fifth Amendment, *see generally* Doc. #79.

13

supervision and/or training of employees is subject to the immunity of the discretionary function exemption found in Section 11-46-9(1)(d) of the MTCA."[16] Doc. #92 at 29–33 (omissions in original) (alterations and internal quotation marks omitted).

The MTCA "covers actions for personal injuries caused by the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment*." *Wilcher v. Lincoln Cnty. Bd. of Supervisors and City of Brookhaven, Miss.*, 243 So. 3d 177, 185 (Miss. 2018) (emphasis in original) (internal quotation marks omitted).

> [I]f an employee was acting within the scope of his employment, then he cannot be individually sued. Instead, the plaintiff must sue the government employer …. Conversely, if an employee was acting outside the scope of her employment, then the plaintiff can only sue her individually. The government employer cannot be sued, and the *MTCA … do[es] not apply*.

*Id.* at 186 (emphasis in original) (citations omitted); *see* Miss. Code. Ann. § 11-46-5 ("Notwithstanding the immunity granted in Section 11-46-3, or the provisions of any other law to the contrary, the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment is hereby waived...."). This waiver of immunity is limited given that several exceptions under Miss. Code. Ann. § 11-46-9 reinstate immunity.

Here, the amended complaint alleges that Iniquez "[a]t all times relevant in this Complaint" was "acting under color of state law and within the course and scope of his employment." Doc. #79 at 7. Because the Moslows allege claims against both the City and Iniguez for actions taken within the course and scope of his employment, the state law claims against him fail. S*ee Howard*

---

[16] The City Defendants also submit that "the [state law] claims must be barred by *Heck* because they are based on the same facts as [the] clearly *Heck*-barred federal claims." Doc. #92 at 29 (emphases in original). But given *Heck* does not bar the Moslows' federal claims and because the Moslows do not seek to undermine David's state law conviction, the City Defendants' argument fails. *See* discussion *supra* Section IV(A)(2).

14

*v. Miss. Dep't of Corr.*, No. 1:19CV543, 2020 WL 2063864, at *5 (S.D. Miss. Apr. 29, 2020) ("Howard's allegations do not even hint – let alone establish – that Evans and Mills acted outside the course and scope of their employment. The MTCA therefore applies, and bars Howards [sic] state law claims against Evans and Mills. These claims will be dismissed.") (footnotes omitted). Additionally, as the City Defendants note, complete immunity from suit under Section 11-46-9(1)(m) is warranted simply because David was a detainee at SPD at the time the drive-by shooting was incorrectly placed on his NCIC record. Doc. #79-2 at PageID 3637; Doc. #79-6 at PageID 4027; *see* Miss. Code. Ann. § 11-46-9(1)(m) (governmental entity and its employees are immune from allegations "[o]f any claimant who at the time the claim arises is an inmate of any detention center, jail …, penitentiary or other such institution"); *see also Moore v. Monroe Cnty. Det. Facility*, No. 1:24-CV-90, 2024 WL 4757601, at 7 n.17 (N.D. Miss. Nov. 12, 2024) ("And the Board is immune from suit under § 11-46-9(1)(m) …. Moore was either a pretrial detainee or an inmate during the relevant period."). For this reason, the City is immune from suit under the MTCA. *Fair v. Town of Friars Point*, 930 So. 2d 467, 471 (Miss. Ct. App. 2006) ("If any subpart of § 11-46-9(1) applies, immunity exists.").

### 2. Loss of consortium

The City Defendants argue that Suzanne's "state-law claims for loss of consortium are based on an underlying MTCA claim that fails [therefore] her loss of consortium claim also fails." Doc. #92 at 33.

Because David's federal and state law claims against the City Defendants fail, Suzanne's loss of consortium claim fails. *See Applewhite v. Dep't of Veterans Affs.,* 364 Fed. App'x 97, 100–01 (5th Cir. 2010) ("Mississippi law dictates that if the underlying personal injury claim is disposed of, the loss of consortium claim cannot be maintained on its own.") (quoting *J & J Timber Co. v.*

15

*Broome*, 932 So. 2d 1, 6 (Miss. 2006)); *accord Benavides v. Cnty. of Wilson*, 955 F.2d 968, 975 (5th Cir. 1992) (affirming dismissal of wife's loss of consortium claim where spouse's § 1983 claims failed). Accordingly, judgment on the pleadings will be granted on Suzanne's state law claims.

V
**Conclusion**

The City Defendants' motion for judgment on the pleadings [91] is **GRANTED**.

**SO ORDERED**, this 19th day of August, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**